**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                        )
**U.S. SECURITIES AND EXCHANGE COMMISSION,** )          **Case Number:**
                                                        )
                              **Plaintiff,**            )          **22-cv-07081**
                                                        )
                      **v.**                            )
                                                        )          **COMPLAINT**
                                                        )
**LEE SIMMONS,**                                        )          **JURY TRIAL DEMANDED**
                                                        )
                              **Defendant.**            )
_____         )

        Plaintiff U.S. Securities and Exchange Commission (the "Commission" or "SEC")

alleges as follows:

## SUMMARY

        1.      Defendant Lee Simmons ("Simmons" or "Defendant") perpetrated a scheme to

defraud the market with a fraudulent tender offer for BlueLinx Holdings, Inc. ("BlueLinx"), a

New York Stock Exchange-listed company, with which Simmons had no affiliation.

        2.      Between November 2019 and February 2020, Simmons made false and

misleading statements and filed false documents with the SEC as part of multiple attempts to

manipulate the price of BlueLinx common stock and profit from his purchase of BlueLinx

securities.

        3.      Between February 4, 2020 and February 20, 2020, Simmons purchased more than

900 "out-of-the-money" BlueLinx call options in which the strike price of the options

dramatically exceeded the price of BlueLinx common stock at the time.

        4.      On February 20, 2020, Simmons issued a press release announcing that Bluefin

Acquisition, LLC ("Bluefin"), a company Simmons formed three months earlier and controlled,

was commencing a tender offer to acquire at least 35% of BlueLinx's outstanding stock at a price of $24.50 per share, which reflected a more than 75% premium over the share price at market open on February 20.

5.      Acquiring 35% of the outstanding shares of BlueLinx at $24.50 per share would have required an investment of approximately $80 million.

6.      After issuing the press release, Simmons attempted to sell his BlueLinx call options via a limit order.  However, he failed to sell the options immediately because he set his limit price too high and his orders were not filled.

7.      On February 21, 2020, shortly before his options were set to expire, Simmons issued a second press release "confirming" the previously announced tender offer.  This time, after placing a market order to sell some, but not all, of his call options, Simmons successfully sold approximately one-third of his call options, generating approximately $24,000 in profits.  His limit orders to sell BlueLinx options went unfilled.

8.      The tender offer was a sham and the press releases were false.  Simmons knew, or was reckless in not knowing, that he and Bluefin lacked the resources necessary to conduct a legitimate tender offer for BlueLinx.  Instead, he attempted to use the news of an apparent tender offer to manipulate the price of BlueLinx stock to personally profit.

9.      By knowingly or recklessly engaging in the conduct described in this Complaint, Simmons violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-8 [17 C.F.R. §§ 240.10b-5 and 240.14e-8] thereunder; and Section 207 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-7].

2

## JURISDICTION AND VENUE

10.     The Commission brings this action pursuant to Sections 20(b) and 20(d) of the

Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C.

§ 78u(d)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] to enjoin such transactions,

acts, practices, and courses of business and to obtain disgorgement, prejudgment interest, civil

penalties, and such other and further relief as the Court may deem just and appropriate.

11.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15

U.S.C. §§ 78u(d), 78u(e), and 78aa], and Sections 209(d) and 209(e) of the Advisers Act [15

U.S.C. §§ 80b-9(d) and 80b-9(e)].

12.     Venue in this district is proper under Section 22(a) of the Securities Act [15

U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 209 of the

Advisers Act [15 U.S.C. § 80b-9].  Certain of the transactions, acts, practices, and courses of

business constituting the violations alleged herein occurred within the Southern District of New

York, including Simmons placing trades in BlueLinx options via the NASDAQ Options market,

which is located in this district.

## DEFENDANT

13.     **Lee Simmons**, age 56, is a resident of Minneapolis, Minnesota.  Simmons

purports to be the Director of Bluefin; the Managing Member of BlackBox, LLC; the Director of

Alpha Funds, LLC; and the Chief Compliance Officer of Alternative Asset Management, LLC.

Simmons previously held Series 7 and 63 licenses relating to the sale of securities, which lapsed

in the late-1990s.

3

## RELATED ENTITIES

14.    **BlueLinx Holdings, Inc**. (previously defined as "**BlueLinx**") is a Delaware corporation headquartered in Marietta, Georgia.  The company has stock registered with the Commission pursuant to Section 12(b) of the Exchange Act.  During the relevant time period through the present, BlueLinx common stock has traded under the ticker "BXC" on the New York Stock Exchange.

15.    **Bluefin Acquisitions, LLC** (previously defined as "**Bluefin**") is a Delaware limited liability company, which Simmons formed on November 26, 2019.  Bluefin is the company through which Simmons purported to commence the tender offer to acquire BlueLinx.

16.    **BlackBox, LLC** ("**BlackBox**") is a Minnesota limited liability company, which Simmons formed in 2001.  Simmons was the Managing Member of BlackBox, which is the owner of the brokerage account through which Simmons purchased BlueLinx call options. BlackBox purportedly owns Alternative Asset Management, LLC.

17.    **Alpha Funds, LLC**. ("**Alpha Funds**") is a Delaware limited liability company, which Simmons formed on July 8, 2019.  A few months later, on December 26, 2019, Simmons filed a Form D with the SEC in the name Alpha Funds falsely claiming the company was a pooled investment vehicle that raised $245,150,000 from five investors from December 9, 2019 through December 23, 2019.

18.    **Alternative Asset Management, LLC** ("**Alternative Asset Management**") is a Delaware limited liability company, which Simmons incorporated on or about December 18, 2019.  Four days after forming Alternative Asset Management, Simmons filed a Form ADV to register the company as an investment adviser with the SEC.  In the Form ADV, Simmons falsely claimed that Alternative Asset Management had three clients and $20,000,000 in

regulatory assets under management.  Simmons also claimed that Alpha Funds was a client of Alternative Asset Management.

## TERMS USED IN THIS COMPLAINT

### Options

19.     A stock option, commonly referred to as an "option," gives its purchaser-holder the option to buy or sell shares of an underlying stock at a specified price (the "strike" price) by a specified date (the "expiration date").  Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.

20.     A "call" option gives the purchaser-holder of the option the right, but not the obligation, to purchase a specified amount of an underlying security at a specified strike price before expiration.  Generally, the buyer of a call option anticipates that the price of the underlying security will increase before the option expires.

21.     An "out-of-the-money" call option is a call option whose strike price is higher than the current price of the underlying stock.  For example, if a purchaser acquired a call option for ABC stock at a strike price of $20 per share and the current price of ABC stock was $15 per share, the call option would be "out-of-the-money."

### Limit Order

22.     A "limit order" refers to an order to buy or sell a security at a specific price or better.  For example, a customer could place a limit order to sell 100 shares of ABC stock at a price not less than $20 per share.  If the broker can fill the order at that price or better, it should do so.  But, if the price of ABC stock is below the price specified by the customer in the limit order, the shares will not be sold.

**Market Order**

23.     A "market order" refers to an order to buy or sell a security at the best available price.

**EDGAR**

24.     Public companies and other entities and individuals file documents with the SEC predominantly through the SEC's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR").

25.     EDGAR increases the efficiency and fairness of the securities market by providing universal public access to time-sensitive corporate information filed with the SEC via the SEC's website, SEC.gov.  EDGAR is a primary source of information for the investing public about securities trading in the United States.

26.     To be able to file documents on EDGAR, a prospective filer must first complete Form ID, the online application for EDGAR access, and submit a notarized copy of the form signed by an authorized individual of the applicant.  Form ID requires that each applicant provide: the applicant's name; mailing address; state of incorporation; person to be contacted; and other information.  The person who signs Form ID must be a duly authorized individual of the applicant, such as a person with a power of attorney for an individual applicant, or an officer or director in the case of a company applicant.

27.     "Schedule TO-C" is a document filed on EDGAR to report a "written communication relating to an issuer or third party," involving a tender offer.

28.      "Form D" is a document filed on EDGAR to provide notice of a type of exempt offering of securities with the SEC.

**Form ADVs**

29.     "Form ADV" is the form used by investment advisers to register with the SEC
and state securities regulators.  Among other things, Form ADV requires investment advisers to
disclose information about their business, ownership, employees, clients, business practices, fees,
conflicts of interest, and disciplinary information.  Form ADV is filed with the SEC through the
Investment Adviser Registration Depository.

**FACTS**

**Simmons Commenced His Fraudulent Scheme**

30.     In early November 2019, Simmons embarked on his scheme to profit by falsely
inflating the price of BlueLinx common stock through a phony tender offer by seeking to
associate with a third-party transfer agent ("Transfer Agent 1").  Simmons told Transfer Agent 1
that he required assistance with a non-hostile tender offer for an entity he declined to identify.
Based on the representation that the tender offer was non-hostile, Transfer Agent 1 was
amenable to assisting Simmons.

31.     Transfer agents perform a variety of functions in exchange for compensation.  In
the context of a tender offer, transfer agents often function as an intermediary of the acquiring
company, supporting the tender offer, by, for example, facilitating the tendering of shares in
connection with the offer.

32.     On November 26, 2019, Simmons formed Bluefin, an entity which Simmons
controlled and which Simmons later falsely represented would acquire the shares of BlueLinx
via a purported tender offer.

33.     Between November 26, 2019 and December 18, 2019, through a brokerage
account in the name of his entity BlackBox, Simmons purchased more than 1,200 out-of-the-

money BlueLinx call options with a December 20, 2019 expiration date ("December 20 BlueLinx Call Options"), at a total cost of nearly $9,000.  The strike prices for these options ranged from $12.50 per share to $17.50 per share.  During the period between market open on November 26, 2019 and market open on December 18, 2019, the opening price of BlueLinx common stock ranged from approximately $9.55 per share to $12.16 per share.

34.     On December 13, 2019, without providing notice to Transfer Agent 1, Simmons emailed BlueLinx's Board of Directors proposing a tender offer to acquire 35% to 50% plus 1 share of BlueLinx's outstanding stock at a price of $19.42 per share.  This was Simmons's first communication with BlueLinx.

35.     The proposed tender offer price reflected a premium of approximately 70% over BlueLinx's opening price of $11.42 per share on December 13, 2019.

36.     If consummated, the transaction would have cost Simmons between $63 million and $90 million depending on the number of shares purchased.

37.     In his email transmitting the purported "offer," Simmons wrote that he would file the "Schedule TO," which is a tender offer statement to be filed with the SEC, "as soon as practicable with an expected date of no later than Monday, December 23, 2019 after market close."

38.     Simmons also stated in his email that Transfer Agent 1 could facilitate the transaction, although Transfer Agent 1 had not signed a contract with Simmons, did not consent to have its name included in a communication to BlueLinx's Board of Directors, and did not know that Simmons was going to send such an email.

39.     After Transfer Agent 1 learned of Simmons communication to BlueLinx, Transfer Agent 1 terminated its relationship with Simmons.

40.     On or about December 19, 2019, counsel for BlueLinx spoke with Simmons. Counsel concluded that Simmons did not seem credible.  Counsel concluded that Simmons did not seem to understand how a transaction would work, failed to clearly answer questions about his proposal, and seemed confused by certain corporate transaction matters that were discussed. BlueLinx did not publicize the purported offer.

41.     Simmons did not file a Schedule TO or make any wide spread disclosure of the purported "offer," and his December 20 BlueLinx Call Options expired.

**Simmons Committed Additional Deceptive Acts In Furtherance Of His Fraudulent Scheme**

42.     Simmons then committed additional deceptive acts in an ongoing effort to further his fraudulent scheme.

43.     On December 18, 2019, Simmons formed Alternative Asset Management. Simmons listed BlackBox as the owner of Alternative Asset Management and identified himself as Chief Compliance Officer for Alternative Asset Management.

44.     Four days after forming Alternative Asset Management, on December 22, Simmons filed a Form ADV to register the company with the SEC as an investment adviser.  In that filing, Simmons falsely claimed that Alternative Asset Management had three clients and $20 million in assets under management.

45.      Simmons claimed that one of Alternative Asset Management's clients was Alpha Funds, an entity Simmons had formed just months earlier in July 2019.  In the Form ADV, Simmons falsely claimed that Alpha Funds was a private investment fund with a gross asset value of $257,125,000.

46.     On December 26, 2019, Simmons publicly filed a Form D with the SEC on EDGAR on behalf of Alpha Funds, listing himself as the Director of Alpha Funds.  In the same

9

document, Simmons falsely claimed that Alpha Funds sold over $245,000,000 in securities to five investors between December 9, 2019 and December 23, 2019.

47.     The next day, December 27, 2019, Simmons publicly filed a Form D with the SEC on EDGAR on behalf of Bluefin, the company Simmons was supposedly going to use to acquire BlueLinx securities in the purported tender offer.  In the filing, Simmons claimed that Bluefin was offering various securities, including equity and debt, that the offering amount was "indefinite" and that the minimum required investment from an outside investor was $1 million. The filing also noted that as of the date of the filing, the offering had raised $0.

48.     Around the same time, Simmons contacted a new transfer agent to assist with the purported tender offer ("Transfer Agent 2").  Transfer Agent 2 recommended another company to assist as information agent ("Information Agent").  Subsequently, Simmons executed agreements with Transfer Agent 2 and Information Agent.

### Simmons Made A Second Attempt To Manipulate The Price Of BlueLinx Stock

49.     Undeterred by his initial failure, Simmons attempted again to profit from fraudulently manipulating the price of BlueLinx stock via a phony tender offer.

50.     Between December 23, 2019 and January 6, 2020, Simmons bought more than 700 out-of-the-money BlueLinx call options with an expiration date of January 17, 2020 ("January 17 BlueLinx Call Options"), at a total cost of more than $9,000.  These options had strike prices ranging from $17.50 per share to $20.00 per share.  During the period between market open on December 23, 2019 and market open on January 6, 2020, the opening price of BlueLinx common stock ranged from approximately $12.59 per share to $14.35 per share.

51.     On January 16, 2020—the day before his options expired—Simmons logged into the SEC's EDGAR system and attempted to file a Schedule TO-C to commence a purported tender offer to acquire BlueLinx.

52.     EDGAR automatically blocked the attempted Schedule TO-C filing due to irregularities concerning the document, and it was neither accepted by EDGAR nor publicly released.

53.     Later that day, Simmons again attempted to file the Schedule TO-C on EDGAR. The SEC also blocked that attempted filing, and it was neither accepted by EDGAR nor publicly released.

54.     On January 17, 2020, Simmons' January 17 BlueLinx Call Options expired.

55.     Four days later, on January 21, 2020, Simmons contacted the SEC and asked that the attempted filings be withdrawn and deleted.  Simmons never filed a Schedule TO-C on EDGAR, and the attempted filings were neither accepted by EDGAR nor publicly released.

**Simmons' Third Attempt To Manipulate BlueLinx Stock Succeeded**

56.     Shortly after his second effort to manipulate the price of BlueLinx common stock failed, Simmons prepared for his third attempt.

57.     Between February 4, 2020 and February 20, 2020, Simmons bought 926 out-of-the-money BlueLinx call options with an expiration date of February 21, 2020 ("February 21 BlueLinx Call Options") at a total cost of approximately $10,400.  These options had strike prices ranging from $15.00 per share to $17.50 per share.  During the period between market open on February 4, 2020 and market open on February 20, 2020, the opening price of BlueLinx common stock ranged from approximately $12.24 per share to $13.81 per share.

**<u>Simmons Publicly Announced the Fake Tender Offer</u>**

58.     On February 20, 2020—the day before his February 21 BlueLinx Call Options were due to expire—Simmons issued a press release publicly announcing that Bluefin was launching a tender offer to acquire at least 35% of BlueLinx common stock at a price of $24.50 per share.  The purported "offer" reflected a premium of more than 75% over the price of BlueLinx common stock, which opened at $13.81 per share that day.

59.     Acquiring 35% of BlueLinx's common stock at a price of $24.50 per share would have cost Simmons and Bluefin more than $80 million.

60.     Prior to issuing the February 20 Press Release, Simmons did not inform Transfer Agent 2 or Information Agent that the February 20 Press Release would be forthcoming, even though he identified Information Agent in the February 20 Press Release as an entity that could be contacted for additional information regarding the tender offer.

61.     Simmons' February 20 Press Release was materially false and misleading because, among other things, it failed to disclose that Simmons and Bluefin lacked the means necessary to complete the tender offer.

62.     In addition, Simmons made several affirmative material misrepresentations in the February 20 Press Release.  For example, Simmons asserted that Bluefin had "commenced" a tender offer for BlueLinx common stock.  However, that representation was false.  Simmons had failed to satisfy the requirements for "commencing" a tender offer.  For example, Simmons failed to file a Schedule TO with the SEC, and he did not deliver a Schedule TO to BlueLinx executives.

63.     Similarly, in the February 20 Press Release, Simmons falsely claimed that the written offer, related letter of transmittal, other tender offer documents, and a

solicitation/recommendation statement "are available at no charge from the SEC through its website."  However, such documents were never filed with the SEC or available on the SEC's website.

64.    In the February 20 Press Release, Simmons also falsely claimed that Individual 1 was the general counsel for Bluefin.  Individual 1 was an attorney and professor at University of Minnesota Business School, who is an acquaintance of Simmons, but he was not the general counsel for Bluefin.

65.    Reasonable investors would have considered these misrepresentations and the omission that Simmons and Bluefin lacked the financial means to complete the purported tender offer to be important in making their decision whether or not to purchase BlueLinx securities.

### The Market Reacted To The February 20 Press Release

66.    The market reacted to Simmons' false February 20 Press Release.

67.    Shortly after Simmons issued the February 20 Press Release, at 3:33 p.m., the New York Stock Exchange halted trading in BlueLinx securities due to significant increase in price in a short period of time.  When trading resumed approximately 5 minutes later, the price of BlueLinx stock rocketed to a high of $22.19 per share, an increase of more than 55% from the price at which the stock was trading immediately prior to the issuance of the February 20 Press Release.  At approximately 3:53 p.m., the New York Stock Exchange halted trading in BlueLinx securities for the remainder of the day.

68.    In addition, the volume of trading in BlueLinx common stock substantially increased after Simmons issued the February 20 Press Release.  On February 20, over 450,000 shares of BlueLinx stock were traded, with nearly 400,000 shares being traded after Simmons

issued the February 20 Press Release.  The day before, fewer than 76,000 shares of BlueLinx common stock were traded.

69.     Although he successfully moved the market price of BlueLinx common stock with the February 20 Press Release, Simmons failed to immediately profit from his fraud.  He attempted to sell all of his February 21 BlueLinx Call Options, via three separate limit orders, but set the limit at a price the market did not reach.  As a result, Simmons' sale orders went unfilled and he was unable to sell his February 21 BlueLinx Call Options on February 20.

**BlueLinx Issues A Press Release Responding To The Purported Tender Offer**

70.     After the market closed on February 20, 2020, BlueLinx issued a press release stating that BlueLinx was not able to "assess the validity of the purported offer" from Simmons and Bluefin.  BlueLinx stated further that it believed the "purported offeror's actions may be false and misleading in violation of the U.S. securities laws because they failed to comply with the filing and disclosure requirements."

71.     In the same press release, BlueLinx also urged "public investors to carefully scrutinize any further communications from the purported offeror and rely only on tender offer materials that are properly filed with the U.S. Securities and Exchange Commission."  BlueLinx added that "[u]nless and until a valid tender offer is made, the Company will not comment further regarding the actions of the purported offeror."

**Unable to Sell His Call Options, Simmons Issued Another False Press Release**

72.     The next day, February 21, until approximately 3:17 p.m., Simmons continued to attempt to sell his February 21 BlueLinx Call Options without success.

73.     At approximately 3:21 p.m. on February 21, Simmons issued a second press release "to confirm the Offer for BlueLinx Holdings, Inc. announced on February 20, 2020."

("February 21 Press Release").  The February 21 Press Release reaffirmed the material

misrepresentations and omissions in the February 20 Press Release.  The February 21 Press

Release also stated that the tender offer would be filed and available no later than Monday,

February 24, 2020.  In addition, the February 21 Press Release named both Information Agent

and Transfer Agent 2 as entities that shareholders could contact.

74.     Before Simmons issued the February 21 Press Release, the price of BlueLinx

common stock was trading at $15.15 per share.  After Simmons issued the February 21 Press

Release, the price of BlueLinx stock jumped.  Approximately six minutes after Simmons issued

the February 21 Press Release, trading in BlueLinx was halted with the price at $16.97 per share.

When trading in BlueLinx resumed that afternoon, the stock price reached a high of $17.31 per

share.  The volume of BlueLinx shares traded on February 21, 2022 was 1,583,925.

75.     At approximately 3:55 p.m., a few minutes before the market closed, Simmons

sold 344 of his February 21 BlueLinx Call Options, realizing a profit of $24,104 on those

options.  Simmons sold those options via a market order.  His limit orders to sell his February 21

BlueLinx Call Options went unfilled.

76.     Simmons never filed a Schedule TO-C in connection with the purported tender

offer.

**BlueLinx Issued Another Press Release Regarding The Purported Tender Offer**

77.     After the market closed on February 24, 2020, BlueLinx issued another press

release addressing the purported tender offer publicly announced by Simmons and Bluefin.  In its

press release, BlueLinx stated that "no tender offer materials have been filed with the SEC."

BlueLinx also stated that it understood that Information Agent had terminated its engagement

with Bluefin and was no longer serving as Information Agent in connection with the purported

tender offer.

78.     BlueLinx stated further that it "does not believe that this purported offer is, or

was, legitimate or credible."  And that BlueLinx "believes that the purported offeror's actions

may be unlawful, and false and misleading in violation of the U.S. securities laws, because they

failed to comply with the filing and disclosure requirements under those laws."

## Simmons' Communications With Federal Agents

79.     On June 28, 2021, federal agents questioned Simmons at a residence in

Minneapolis, Minnesota.

80.     During that questioning, Simmons admitted that he issued both the February 20

Press Release and the February 21 Press Release.  Simmons also admitted that Alpha Funds had

no assets.

81.     In addition, Simmons denied attempting to sell BlueLinx options at all, which was

false.

## Simmons Harmed The U.S. Markets

82.     Simmons' conduct caused direct substantial harm to the U.S. markets and

investors.  The false press releases caused approximately 2 million shares of BlueLinx stock to

be traded at inflated prices.

83.     Investors who purchased BlueLinx shares after the false press releases, either

because of the press releases or for other reasons, paid artificially inflated prices for those shares.

84.     Simmons' conduct also caused other, unquantifiable harm to the U.S. markets and

investors.  Falsely claiming to be making a tender offer and the filing of false documents on the

SEC's EDGAR system undermines investors' confidence.

## Simmons Perpetrated A Fraudulent Scheme

85.     Between November 2019 and February 2020, Simmons repeatedly attempted to manipulate the price of BlueLinx securities through misstatements and omissions relating to phony tender offers, which he knew, or was reckless in not knowing, he could not complete.

86.     In furtherance of his scheme and to conceal his malfeasance behind a veil of legitimacy, Simmons filed false documents with the SEC and affiliated himself, or claimed affiliation, with various third parties, such as Transfer Agents 1 and 2 and Information Agent.

87.     In addition, via the February 20 Press Release and February 21 Press Release Simmons made misstatements of material fact to the market and omitted to state the material fact that he lacked the necessary assets to complete the purported tender offer.

88.     Simmons attempted to profit from his scheme by purchasing out-of-the-money BlueLinx call options that were set to expire shortly after he made the phony tender offers known to other parties.

89.     Ultimately, Simmons succeeded in realizing ill-gotten gains of approximately $24,000 through his fraud.

90.     In addition, in violation of the Advisers Act, Simmons knowingly or recklessly made misstatements in documents filed with the SEC, including the Form ADV for Alternative Asset Management, in which Simmons falsely claimed that Alternative Asset Management had three clients and $20 million in assets under management.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

91.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 90, inclusive, as if they were fully set forth herein.

92.     Defendant by engaging in the conduct described above, directly or indirectly, in connection with the offer or sale of securities, by the use of the means or instruments of transportation, or communication in interstate commerce or by use of the mails, knowingly or recklessly:

> (a)     employed devices, schemes or artifices to defraud;

> (b)     obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

> (c)     engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

93.     By engaging in the forgoing conduct, Simmons violated and, unless enjoined and restrained, will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

94.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 90, inclusive, as if they were fully set forth herein.

95.     Defendant, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly:

> (a)     employed devices, schemes or artifices to defraud;

> (b)     made untrue statements of material facts or omitted to state material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

96.     By engaging in the foregoing conduct, Simmons violated and, unless enjoined and restrained, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## THIRD CLAIM FOR RELIEF

**Violations of Section 14(e) of the Exchange Act and Rule 14e-8 Thereunder**

97.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 90, inclusive, as if they were fully set forth herein.

98.     Defendant made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or engaged in fraudulent, deceptive, or manipulative acts or practices in connection with a tender offer or a solicitation of security holders in favor of an offer, request, or invitation.

99.     On February 20, 2020 and again on February 21, 2020, Simmons publicly announced that Bluefin planned to make a tender offer that had not yet been commenced, and Defendant:

(a)  made the announcement of a potential offer without the intention to commence the offer within a reasonable time and complete the offer; and

(b) did not have the reasonable belief that Simmons and Bluefin would have the means to purchase securities to complete the offer.

100.    By engaging in the foregoing conduct, Simmons violated and, unless enjoined, will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-8 [17 C.F.R. § 240.14e-8], thereunder.

## FOURTH CLAIM FOR RELIEF

### Violations of Section 207 of the Advisers Act

101.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 90, inclusive, as if they were fully set forth herein.

102.    Simmons, knowingly or recklessly, made untrue statements of material fact in Alternative Asset Management's Form ADV concerning its number of clients and assets under management.

103.    By engaging in the foregoing conduct, Simmons violated and, unless enjoined will continue to violate, Section 207 of the Advisers Act [15 U.S.C. § 80b-7].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

## I.

Permanently restraining and enjoining Defendant Simmons from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b), 78n(e)] and Rules 10b-5 and 14e-8 [17 C.F.R. §§ 240.10b-5, 240.14e-8] thereunder; and Section 207 of the Advisers Act [15 U.S.C. § 80b-7];

**II.**

Ordering Defendant Simmons to disgorge any and all ill-gotten gains together with prejudgment interest thereon, derived from the activities set forth in this Complaint;

**III.**

Ordering Defendant Simmons to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

**IV.**

Permanently restraining and enjoining Defendant Simmons, or any entities he controls, from (i) participating in the issuance, purchase, offer, or sale of any security, or (ii) engaging in activities for purposes of inducing or attempting to induce the purchase or sale of any security; provided, however, that he not be prevented from purchasing or selling securities listed on a national securities exchange for his own personal account;

**V.**

Prohibiting Defendant Simmons from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

**VI.**

Granting such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Respectfully submitted,

By: _Assunta Vivolo_

Assunta Vivolo, Esq.
John V. Donnelly III, Esq.*
Han Nguyen, Esq.*
David W. Snyder, Esq.*

*Attorneys for Plaintiff*

U.S. Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
VivoloA@sec.gov

Dated:  August 19, 2022

*Application for admission *pro hac vice* to be filed.